IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR DORAL BANK<br><br>**Plaintiff/Counter-Defendant**<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY OF PUERTO RICO; CONSTRUCTORA JAPIMEL, INC.,<br><br>**Defendants/Counter-Claimants** | **Civil No.** 18-1107 (FAB) |
| MAPFRE PRAICO INSURANCE COMPANY OF PUERTO RICO<br><br>**Third—Party Plaintiff**<br><br>v.<br><br>ECHANDI GUZMÁN & ASSOCIATES, INC.; EFRAÍN ECHANDI-OTERO; ACE INSURANCE COMPANY,<br><br>**Third—Party Defendants** | |

**OPINION AND ORDER**

BESOSA, District Judge.

Before the Court is Plaintiff/Counter-Defendant Federal Deposit Insurance Corporation, as receiver for Doral Bank ("FDIC-R")'s motion for reconsideration pursuant to Federal Rule of Civil

Procedure 59(e), (Docket No. 89), and the FDIC-R's motion in compliance with the Court's July 20, 2022 order.  (Docket No. 88.) For the reasons set forth below, the FDIC-R's motion for reconsideration is **DENIED** and its motion in compliance, which the Court construes as a motion for substitution, is **referred to the arbitration panel**.

I.  Background

The Court will assume familiarity with the facts of this case, apart from recounting some relevant details that will put its decision in context.  Doral Bank ("Doral") financed the building of a housing project in Carolina, Puerto Rico, to be built by contractor Constructora Japimel, Inc. ("Japimel"), whose work was guaranteed with performance bonds by Mapfre Praico Insurance Company of Puerto Rico ("Mapfre").  (Docket No. 1 at p. 1.)  For various reasons the construction stalled, and the project eventually fell apart.  (Docket Nos. 12-1 at pp. 3—4 and 12-4 at pp. 14—16.)

On October 2, 2009, after assuming the rights to the construction contract,[1] Doral sued Mapfre and Japimel in the Court of First Instance of Puerto Rico ("state court").  (Docket No. 12-1.)  Japimel counterclaimed, alleging breach of contract.

---

[1] There were two contracts executed for the construction project between Japimel and the original developer, Pórticos del Sol.  Docket No. 1 at p. 1.  For simplicity's sake, the Court will refer to these as "the construction contract."

(Docket No. 12-4.)  On February 9, 2012, the state court referred the breach of contract claim to arbitration based on an arbitration clause in the construction contract and stayed the state court proceedings.  (Docket No. 11-1.)

On February 27, 2015, while the arbitration was on-going, the Office of the Commissioner of Financial Institutions of the Commonwealth of Puerto Rico closed Doral and appointed the FDIC as receiver for the failed bank.  (Docket No. 1 at p. 2.)  On June 4, 2015, Japimel submitted its claims to the FDIC-R in compliance with the required administrative claims process of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA").  (Docket No. 7 at p. 4.)

What followed next was a prolonged litigation over who should be substituted as the plaintiff in the arbitration and the state court case.  On June 15, 2015, Bautista REO PR Corp. ("Bautista") moved to substitute Doral in the arbitration proceeding, stating it had a "bill of sale" with the FDIC-R by which it had acquired the credit facilities between Doral and the project developer. (Docket No. 11-3.)  Bautista then filed a motion to substitute Doral before the state court on June 23, 2015.  (Docket No. 12-7.)

Japimel opposed the substitution of Bautista in both the arbitration and the state court unless Bautista was ordered to disclose the terms of the bill of sale, based on Japimel's

intention to exercise its litigious redemption right pursuant to Puerto Rico law.  (Docket No. 30-1; Docket No. 30-5.)  The arbitration panel held that the state court was the proper forum to determine the substitution.  (Docket No. 91-2.)  The state court, however, on November 23, 2015, analyzed the construction contract and Puerto Rico law and determined that it lacked jurisdiction to grant Bautista's substitution request because the broad arbitration clause required all issues related to the construction contract to be arbitrated.  (Docket No. 12-8 at p. 6-8.)  The court noted that it had already dismissed the case without prejudice after referring it to arbitration.  Id. at pp. 7-8.

On December 2, 2015, the FDIC-R disallowed Japimel's administrative claim, stating that the claim was "[n]ot proven to the satisfaction of the FDIC as Receiver for Doral Bank" and that "[t]he liability or obligation, if any, related to your claim has been assumed by:  Bautista Finance Holdings . . ."  (Docket No. 7-2.)  Japimel did not seek an administrative appeal of the disallowance but proceeded with the arbitration, filing a "motion in compliance with order" on December 11, 2015 in response to the arbitration panel's prior order to inform it of the state of the substitution proceedings before the state court.  (Docket No. 8 at p. 5.)

On February 9, 2016, Bautista again requested substitution from the arbitration panel, notifying it of the state court's decision that it had no jurisdiction to decide the substitution. (Docket No. 30-6 at p. 19—22.)  The panel ordered Bautista to provide information about its purchase of loans from the FDIC. Id. at pp. 77—78.  Bautista moved the panel to reconsider its decision on September 30, 2016, (id. at pp. 80—88), and then turned to the state court for an injunction against the arbitration panel's order.  Id. at p. 1—2.  The state court denied the request on August 7, 2017, stating that because Bautista was not a party to the state court proceedings, the court had no jurisdiction to address its request.  (Docket No. 30-8 at p. 3.)  Bautista asked the state court to reconsider its decision, (Docket No. 30-9), which the court denied.  (Docket No. 30-11.)

Bautista does not appear to have taken any further action to substitute itself, and the failed bank Doral remained the plaintiff in the arbitration and state court proceeding until February 23, 2018, when the FDIC-R filed a notice of substitution in the state court.  (Docket No. 12-17.)  After removing to federal court, the FDIC-R filed a motion to dismiss based on Japimel's alleged non-compliance with the administrative claims process.  (Docket No. 7.)  The FDIC-R argued that Japimel had not complied with FIRREA's requirement to 'continue' a previously filed action, or

file a new case in the district court, within 60 days of the FDIC-R's notice of disallowance.  Id.  The Court denied this motion, holding that Japimel's motion filed in the arbitration on December 11, 2015 was sufficient because an arbitration could be considered an 'action' pursuant to FIRREA and Japimel's motion was sufficiently affirmative.  (Docket No. 84.)  In its order, the Court instructed the FDIC-R to advise it on how the case should proceed, and specifically whether the case should be referred back to the arbitration panel.  Id. at pp. 18—19.

The FDIC-R now moves the Court to reconsider its denial of the motion to dismiss, (Docket No. 89), and states to the Court that the proper next move is to substitute Bautista as plaintiff.  (Docket No. 88.)  Coming back to the heart of the dispute that led to years of litigation in the arbitration and state court, Japimel states that it does not oppose substitution of Bautista *per se*, but that Bautista must be ordered to disclose the information necessary for Japimel to exercise the redemption of the litigious credit pursuant to Puerto Rico law.  (Docket No. 94 at pp. 1—2.)  The FDIC-R states that Japimel has misunderstood the requirements of the litigious credit process and does not need the specific price in order to assert a timely redemption claim.  (Docket No. 98 at pp. 7—8.)

Civil No. 18-1107 (FAB)                                                  7

The Court will first address the FDIC-R's motion for reconsideration, (Docket No. 89), and then the FIDC-R's motion in compliance with its order, (Docket No. 88), which the Court construes as a motion for substitution.

**II.  Motion for Reconsideration**

    **A.  Applicable Law**

The Federal Rules of Civil Procedure "do not specifically provide for the filing of motions for reconsideration." Sánchez-Pérez v. Sánchez-González, 717 F. Supp. 2d 187, 193-94 (D.P.R. 2010) (Besosa, J.) (citation omitted). "[I]t is settled in this circuit[, however,] that a motion which ask[s] the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed. R. Civ. P. 59(e)." Appeal of Sun Pipe Line Co., 831 F.2d 22, 24 (1st Cir. 1987).

Pursuant to Federal Rule of Civil Procedure 59(e), a district court will alter its original order only if it "evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) (quoting Global Naps, Inc. v. Verizon New England, Inc., 489 F.3d 13, 25 (1st Cir. 2007)). "Likewise, a motion for reconsideration should be granted if the court 'has patently misunderstood a party . . . or has made an

Civil No. 18-1107 (FAB)                                                8

error not of reasoning but apprehension.'" Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008) (quoting Sandoval Díaz v. Sandoval Orozco, 2005 WL 1501672, at *2 (D.P.R. June 24, 2005)) (Gelpí, J.).  A motion for reconsideration does "not provide a vehicle for a party to undo its own procedural failures [or] allow a party [to] advance arguments that could and should have been presented to the district court prior to judgment." Iverson v. City of Bos., 452 F.3d 94, 104 (1st Cir. 2006) (citation omitted).  "Rule 59(e) does not exist to allow parties a second chance to prevail on the merits . . . [and] is not an avenue for litigants to reassert arguments and theories that were previously rejected by the Court."  Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 322 F.R.D. 439, 441 (D.P.R. 2017) (Besosa, J.) (citations omitted).

In deciding a motion for reconsideration, the reviewing court has considerable discretion.  Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004).  "As a general rule, motions for reconsideration should only be exceptionally granted." Villanueva-Méndez v. Nieves Vázquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) (Domínguez, J.).

   **B.   Discussion**

The FDIC-R argues that the Court's order misstated the FDIC-R's argument about the proper forum for Japimel to 'continue

the action,' and that the Court did not address relevant authority cited by the FDIC-R. (Docket No. 89 at pp. 4—6.) Japimel argues that the decisions of the state court made it clear that the arbitration was the correct venue in which to 'continue the action,' and that the authority pointed to by the FDIC-R is distinguishable. (Docket No. 95 at pp. 4—7.)

### i. Misapprehension of FDIC-R's Argument That the Case Should Be Continued in State Court

At issue in the motion to dismiss was whether Japimel complied with FIRREA's obligation either to "file suit on such claim (or continue an action commenced before the appointment of the receiver) . . . ." within 60 days of the notice of disallowance. See Docket No. 7; 12 U.S.C. § 1821(d)(6)(A). The FDIC-R argued in its motion to dismiss that Japimel's filing of a motion in the arbitration proceeding could not be considered "continu[ing] an action" based on the plain meaning of the statute, the context of FIRREA as a statutory whole, and from its legislative intent. (Docket No. 7 at pp. 9—16.) The Court's order held that an arbitration could be considered an "action" within the meaning of FIRREA based on the policy reasons for the statute and persuasive First Circuit Court of Appeals precedent. (Docket No. 84 at pp. 12—17.)

The FDIC-R now argues that the Court misunderstood the FDIC-R's argument, because the Court stated in its order that requiring a party to file a new case in the district court when there is an arbitration on-going does not serve the policy goals of FIRREA. (Docket No. 89 at p. 3.) The FDIC-R argues that its argument was that Japimel was always required to file its motion in the state court proceeding, not file a new case in district court. Id. at p. 4.

The Court disagrees that its analysis mischaracterized the FDIC-R's argument. First, the Court addressed and rejected the FDIC-R's argument that an arbitration could not be considered an 'action' within the meaning of the statute. (Docket No. 84 at pp. 12—17.) Once the Court had decided that question, it had determined the dispositive question of law. Nonetheless, the Court did proceed to explain why filing a motion in the arbitration over the state court served the policy goals of the statute, namely that, "[c]onsidering that the Court of First Instance in this case compelled the parties to arbitrate based on their contract and denied Bautista's motion for substitution stating it had no jurisdiction to rule on the case, the Court is

at a loss to see why Japimel was wrong to file motions in the arbitration following the FDIC-R's denial." Id. at pp. 16—17.[2]

The Court therefore denies the FDIC-R's motion for reconsideration on the ground that it misunderstood the FDIC—R's argument.

### ii. The Sufficiency of Japimel's Motion and Whether a Motion to Renew was Required

In the FDIC-R's motion to dismiss, it explained that courts in this district interpret 'continu[ing] an action' as requiring "an affirmative act," and noted that that conclusion stems from a district court case in Florida, First Union Nat. Bank of Fla. v. Royal Tr. Tower, Ltd., 827 F. Supp. 1564, 1567-68 (S.D. Fla. 1993).  (Docket No. 7 at pp. 16—17.)  The FDIC-R explained that that case traced the legislative history and similar sections of FIRREA and found they suggested that Congress saw a motion to renew as the means of 'continuing' a previously filed action. Id. at p. 17.  The FDIC-R argues in its motion to reconsider that the Court failed to address this interpretation of the words 'continue

---

[2] The FDIC-R states in its motion for reconsideration that "the State Court case was reopened on multiple occasions to adjudicate numerous issues that the arbitration panel could not determine such as Bautista's substitution request, the injunction requested by Bautista, and the redemption claim by Japimel." (Docket No. 89 at p. 4.)  This stretches the meaning of the word "adjudicate" beyond its capacity when in each of those instances the state court in fact rejected that it had the power to decide those issues.  See Docket Nos. 12-8 and 12-13.

Civil No. 18-1107 (FAB)                                        12

an action,' that is, as requiring a motion to renew.  (Docket No. 89 at p. 6.)

The Court finds nothing in Royal Tr. Tower that suggests it made a manifest error of law.  Contrary to what the FDIC-R states, the conclusion of the Royal Tr. Tower court was not that a motion to renew is always required, but to "hold[] that 12 U.S.C. § 1821(d)(6)(B) requires some timely, formal affirmative action 'to continue' a claim filed before FDIC receivership."  See Royal Tr. Tower, Ltd., 827 F. Supp. at 1568.  The Royal Tr. Tower court never went so far as to say a motion to renew was the only means to continue an action, stating only that the construction of the statute "indicate[s] that Congress likened 'continuing' with 'moving to renew' a previously filed suit."  Id. at 1567—68.  The Royal Tr. Tower court clarified that the minimum required of a claimant to 'continue an action' is taking some affirmative action.  See id. at 1567 ("[E]ven if continuing the litigation does not require a 'motion to renew,' it must require at least some affirmative action, or the statutory requirement is meaningless.").  Requiring some affirmative action is the standard that the Court cited and applied in its opinion.  See Docket No. 84 at p. 17.  The Court therefore denies the FDIC-R's motion for reconsideration on the ground that it made a manifest error of law.

Civil No. 18-1107 (FAB)                                                      13

**III. Substitution of Bautista**

After denying the FDIC-R's motion to dismiss, the Court instructed the parties to brief it on how to proceed with the case, and whether the case should be referred to the arbitration panel. (Docket No. 84 at p. 17—18.)  The FDIC-R states the proper next step is substitution of Bautista as plaintiff.  (Docket No. 88 at p. 1.)  Japimel does not oppose substitution on certain conditions, but notes that the state court's resolution of November 23, 2015 already analyzed the prior substitution request of Bautista for Doral, and held that it did not have jurisdiction to address the request.  (Docket No. 94 at p. 1—3.)  The state court held that the decision to substitute instead must be made by the arbitration panel.  Id.  The FDIC-R argues that the Court can decide the issue of substitution because caselaw states that even while a case is stayed, courts retain jurisdiction over collateral matters that do not go to the merits of the case, and substitution is one such collateral matter.  (Docket No. 98 at p. 2—3.)

The FDIC-R became the plaintiff following substitution, but steps into the shoes of Doral, the prior plaintiff.  See O'Melveny & Myers v. F.D.I.C., 512 U.S. 79, 86-87 (1994); see also Fed. Deposit Ins. Corp. v. Ernst & Young LLP, 374 F.3d 579, 581 (7th Cir. 2004) ("FDIC-Receiver steps into the shoes of the failed bank and is bound by the rules that the bank itself would encounter in

Civil No. 18-1107 (FAB)                                                14

litigation.") (citing O'Melveny, 512 U.S. 79).  The state court found it did not have jurisdiction to decide the substitution issue because the construction contract required arbitration of "anything relative to the construction contracts[,]" and that the issue of substitution "is not connected with the lawsuit originally brought before this Court."  (Docket No. 12-8 at p. 7—8.)

Under the law of the case doctrine, "unless corrected by an appellate tribunal, a legal decision made at one stage of a civil or criminal case constitutes the law of the case throughout the pendency of the litigation."  Ellis v. United States, 313 F.3d 636, 646 (1st Cir. 2002) (quoting Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 25 (1st Cir. 1997)).  "This means that a court ordinarily ought to respect and follow its own rulings, made earlier in the same case."  Id. (citing Arizona v. California, 460 U.S. 605, 618 (1983)).  The decision should only be reconsidered if the initial ruling was made on an inadequate record, was designed to be preliminary or tentative, there has been a material change in controlling law, if newly discovered evidence bears on the question, or to avoid manifest injustice, which is something beyond just an erroneous ruling.  Id. at 647—48.

Applying these factors, there is no indication that the prior ruling by the state court should be disrupted.  See id.  The state court made its determination after analyzing the construction

contract and Puerto Rico law.  (Docket No. 12-8.)  The decision was not a preliminary ruling; in fact, the state court considered a second request from Bautista regarding the substitution question and refused to deviate from its initial decision.  (Docket No. 30-8 at p. 3.)  There has been no material change in the law since the time of the state court's decision, or new evidence.  See Ellis, 313 F.3d at 646.  While the parties may prefer that this Court re-visit the substitution question in light of the significant stand-still they appear to have reached, that does not make the current situation a manifest injustice.  See id. at 648 ("Th[e] standard [for manifest injustice] is difficult to achieve: a finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong.")

Because there is no factor pointing to deviating from the decision of the state court on the substitution of Bautista, the Court applies the law of the case and holds that it is without jurisdiction to determine the substitution.  See id. at 647—48; Docket No. 12—8.  The FDIC-R is thus referred to the arbitration panel to make its substitution motion.  See 9 U.S.C. § 3.

**IV.  Conclusion**

For the reasons set forth above, the FDIC-R'S motion for reconsideration is **DENIED**, (Docket No. 89), and its motion for

Civil No. 18-1107 (FAB)                                                16

substitution is **referred to the arbitration panel**.  (Docket No. 88.)

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 31, 2022.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE